Citation Nr: 1518695 
Decision Date: 04/30/15 Archive Date: 05/05/15

DOCKET NO. 09-16 955 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Newark, New Jersey


THE ISSUES

1. Entitlement to an initial rating in excess of 10 percent prior to March 17, 2009 and in excess of 30 percent from March 17, 2009, for posttraumatic stress disorder (PTSD). 

2. Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU).


REPRESENTATION

Appellant represented by: Vietnam Veterans of America


ATTORNEY FOR THE BOARD

K. Anderson, Associate Counsel 




INTRODUCTION

The Veteran had active military duty from November 1989 to May 1990 and from November 1990 to May 1991. 

This matter comes before the Board of Veterans' Appeals (Board) from a November 2007 rating decision from the Department of Veterans Affairs (VA) Regional Office (RO) in Newark, New Jersey. During the course of his appeal, the RO increased the Veteran's rating from 10 percent to 30 percent with an effective date of March 17, 2009. As this increase does not constitute a full grant of the benefit sought, the Board concludes that the initial rating issue remains on appeal. AB v. Brown, 6 Vet. App. 35, 39 (1993). 

This matter was previously before the Board in September 2014. At which time the Board remanded the Veteran's appeal in order to obtain updated treatment records from the VAMC in East Orange, New Jersey. The requested development has been completed by the RO and with no further action necessary to comply with the Board's remand directives; the case is once again before the Board for appellate consideration of the issue on appeal. Stegall v. West, 11 Vet. App. 268 (1998). 

The issues of entitlement to a TDIU is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

The Veteran's PTSD is manifested by symptoms of chronic sleep impairment, nightmares, suspiciousness, anxiety and depression, mood difficulties, irritability, intrusive memories, avoidance behavior, neglect of personal appearance and hygiene, lack of motivation, panic attacks, difficulty adapting to stressful situations and difficulty establishing and maintaining effective work and social relationships. There is no objective evidence of suicidal ideation, obsessional rituals, speech intermittently illogical, near continuous panic attacks or depression affecting the ability to function independently. 


CONCLUSION OF LAW

The criteria for an evaluation of 70 percent for PTSD have been met for the entire period on appeal. 38 U.S.C.A. §§ 1155, 5107(b) (West 2014); 38 C.F.R. §§ 3.321, 4.3, 4.7, 4.130, Diagnostic Code 9411 (2014). 


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Under 38 U.S.C.A. § 7104, Board decisions must be based on the entire record, with consideration of all the evidence. The law requires only that the Board address its reasons and bases for rejecting evidence favorable to the claimant. Timberlake v. Gober, 14 Vet. App. 122 (2000). The Board must review the entire record, but does not have to discuss each piece of evidence. Gonzalez v. West, 218 F.3d 1378 (Fed. Cir. 2000). 

VA is responsible for determining whether the evidence supports the claim or is in relative equipoise with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C.A. § 5107; see Gilbert v. Derwinski, 1 Vet App. 49 (1990). When there is an approximate balance of positive and negative evidence regarding any issue material to the determination, the benefit of the doubt is afforded to the appellant. 

Disability evaluations are determined by comparing a Veteran's present symptomatology with criteria set forth in the VA's Schedule for Rating Disabilities (Rating Schedule), which is based on average impairment in earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. When a question arises as to which of two ratings apply under a particular diagnostic code, the higher evaluation is assigned if the disability more closely approximates the criteria for the higher rating. 38 C.F.R. § 4.7. After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the Veteran. 38 C.F.R. § 4.3. The Veteran's entire history is reviewed when making disability evaluations. See generally, 38 C.F.R. 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995).

Evidence to be considered in the appeal of an initial assignment of a disability rating is not limited to that reflecting the current severity of the disorder. Fenderson v. West, 12 Vet. App. 119 (1999). In Fenderson, the Court discussed the concept of the "staging" of ratings, finding that in cases where an initially assigned disability evaluation has been disagreed with, it is possible for a Veteran to be awarded separate percentage evaluations for separate periods based on the facts found during the appeal period. Id. at 126-28; see also Hart v. Mansfield, 21 Vet. App. 505 (2007).

The Veteran asserts that his service-connected PTSD is more severe than contemplated by the assigned evaluations. Service connection for PTSD was granted by a November 2007 rating decision and an initial 10 percent evaluation assigned under the provisions of 38 C.F.R. § 4.130, Diagnostic Code 9411 (2014) was granted with an increased to 30 percent provided for in an October 2009 rating decision with an effective date of March 17, 2009. 

Diagnostic Code 9411 is subsumed into the General Rating Formula for Mental Disorders (General Rating Formula). Under the General Rating Formula, a 10 percent evaluation contemplates occupational and social impairment due to mild or transient symptoms, which decrease work efficiency and ability to perform occupational task only during periods of significant stress, or symptoms controlled by continuous medication. Id. 

A 30 percent evaluation contemplates occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, or mild memory loss (such as forgetting names, directions, and recent events). Id. 

A 50 percent evaluation is warranted where the disorder is manifested by occupational and social impairment with reduced reliability and productivity due to such symptoms as flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory for example, retention of only highly learned material, forgetting to complete tasks; impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. Id.

A 70 percent evaluation is warranted where the disorder is manifested by occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking or mood, due to such symptoms as suicidal ideation; obsessional rituals which interfere with routine activities; speech that is intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately, and effectively; impaired impulse control, such as unprovoked irritability with periods of violence; spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances, including work or a work-like setting; and an inability to establish and maintain effective relationships. Id.

A 100 percent disability evaluation is warranted when there is total occupational and social impairment, due to such symptoms as: persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time and place; memory loss for names of close relatives, own occupation, or own name. Id.

The nomenclature employed in the rating schedule is based upon the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, of the American Psychiatric Association (also known as "the DSM-IV"). 38 C.F.R. § 4.130 (2014). The DSM-IV contains a Global Assessment of Functioning (GAF) scale, with scores ranging between zero and 100 percent, representing the psychological, social, and occupational functioning of an individual on a hypothetical continuum of mental health-illness. See Carpenter v. Brown, 8 Vet. App. 240, 242 (1995).

The DSM-IV contemplates that the GAF scale will be used to gauge a person's level of functioning at the time of the evaluation (i.e., the current period) because ratings of current functioning will generally reflect the need for treatment or care. While GAF scores are probative of the Veteran's level of impairment, they are not to be viewed outside the context of the entire record. Therefore, they will not be relied upon as the sole basis for an increased disability evaluation.

Ratings are assigned according to the manifestations of particular symptoms. However, the use of the phrase "such as" in 38 C.F.R. § 4.130 demonstrates that the symptoms after that phrase are not intended to constitute an exhaustive list, but rather are to serve only as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. Mauerhan v. Principi, 16 Vet. App. 436 (2002). The evidence considered in determining the level of impairment under § 4.130 is not restricted to the symptoms provided in the Diagnostic Code. Instead, VA must consider all symptoms of a claimant's condition that affect the level of occupational and social impairment, including, if applicable, those identified in the DSM-IV.

As an initial matter, the record reflects that the Veteran has other psychiatric diagnoses, most significantly bipolar disorder. The records do not differentiate between the symptomatology attributed to the nonservice-connected bipolar disorder and the service connected PTSD. In fact, the February 2012 VA examination specifically concluded it was not possible to differentiate the symptoms. Accordingly, all symptoms will be considered as part of the service-connected disorder. Mittleider v. West, 11 Vet. App. 181, 182 (1998), citing Mitchem v. Brown, 9 Vet. App. 136, 140 (1996) (the Board is precluded from differentiating between symptomatology attributed to a nonservice-connected disability and a service-connected disability in the absence of medical evidence which does so).

The Board has determined that a 70 percent evaluation is warranted for the entire period on appeal because the competent evidence of record demonstrates that the Veteran's current disability picture more closely approximates a 70 percent evaluation, but not more. The Board acknowledges that the Veteran's VA examiners noted that the Veteran's PTSD causes him to suffer chronic sleep impairment; intrusive memories and nightmares, panic attacks, depressed mood, hypervigilance, disturbances in motivation and mood, neglect of personal appearance and hygiene, difficulty adapting to stressful situations, impaired impulse control (such as unprovoked irritability and with periods of violence), and difficulty establishing and maintaining work and social relationships. The Veteran denied suicidal or homicidal ideations and hallucinations. The Veteran requires continuous medication for his PTSD.

A treatment note from August 2014 states that the Veteran was seen for a routine psychotherapy follow up wherein he complained of short-tempered behavior at work and irritability. 

A mental health note from July 2014 states that the Veteran continues to have thoughts and nightmares regarding different incidents. At this evaluation the Veteran maintained good eye contact, his speech was productive, he was calm and cooperative, and mood was ok. He denied any auditory or visual hallucinations. No delusions or paranoia elicited. He denied suicidal or homicidal ideations. 

A mental health note from March 2014 states that the Veteran has been frustrated with a co-worker who has been complaining about him regularly. He felt he needed to work out a response to the situation without losing his temper. He still reported low motivation outside of going to work. 

A mental health note from January 2014 states that the Veteran presented for a routine follow up with complaints of lack of motivation. Even though he had ben been going to work every day, he reported little motivation to do anything else. He had not been to the gym, he had gone days without a shower, and did not pay rent on his apartment for 4 months. He slept all the time, did not go out with friends, and he claimed that he could not tolerate crowds well. Overall, the examiner stated that he had been experiencing anhedonia, low energy and poor motivation. 

A mental health treatment note from February 2013 states that the Veteran was seen for a routine mental health evaluation. He presented with reports of angry outburst due to frustration, which he was able to control and manage. He continued to have nightmares at this time, and his mood was "trying." 

A mental health treatment note from December 2012 states that the Veteran reported that he has good days and bad days. He reported no recent or current manic/hypomanic symptoms. He continues to report intrusive thoughts and nightmares. 

The Veteran underwent an examination in February 2012. At this time his diagnosis of PTSD was continued. His GAF score was 65. It was confirmed by the examiner that he has more than one acquired psychiatric disability diagnosed, PTSD and bipolar disorder. However, the Veteran is only service connected for PTSD. The examiner stated that it was not possible to differentiate what symptoms are attributable to the Veteran's PTSD diagnosis. The examiner noted that the Veteran had occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational task, although generally functioning satisfactorily with normal routine behavior, conversation and self-care. This opinion was supported by the fact that the Veteran stated that he has friends he sees, he plays trivia every Sunday, he is close to his family and does not appear to isolate or have a problem with social support. Since his previous examination, he had been working at the same employment for 2.5 years. He was doing well at this job and enjoyed it. He reported that they his employer relies on him a lot and as result works many hours. Overall, the Veteran's PTSD symptoms are manifested by depressed mood, anxiety, chronic sleep impairment, and disturbances of motivation and mood. Moreover, the examiner noted that the Veteran is diagnosed with both bipolar disorder and PTSD. A number of symptoms overlap to include: anger, irritability, depressed mood, and difficulty in relationships with others. 

A mental health treatment note from June 2010 states that the Veteran was still experiencing nightmares and flashbacks, which are causing chronic sleep impairment. Patient reported socializing with a few friends, going to the movies and playing trivia. He reported that he arrives at work on time. In May 2010, the Veteran's mental health treatment note states that his nightmares and flashbacks continue. He had lost motivation to lose weight or exercise. He had issues with procrastination was reporting late to work. 

In January 2010, the Veteran's VA psychiatrist and VA psychotherapist co-authored a letter stating that the Veteran had been diagnosed with both PTSD and bipolar disorder. As a result of his PTSD, he suffers from frequent nightmares and flashbacks with other symptoms of occupational and social impairments. He has a flattened affect, impaired judgement and disturbances of motivation and mood. He has difficulty establishing and maintaining effective social relationships with others. At this time, he has no friends and stays home most of the time. He also had long periods of unemployment. In March 2009, the Veteran reported that he was still working part time. He had issues with procrastination, sleeping too much, being late for appointments and showed impaired impulse control by slamming doors and punching walls. However, the Veteran reported that he had been unable to make any improvement in this area and he has lost several jobs in the past due to his tardiness. He had reported to his current employment late and had received verbal warnings. 

In August 2009, the Veteran was seen during his monthly mental health treatment session. At that time, it was reported that he found employment three weeks prior. His work hours were from 1 PM to 9 PM. He reported to very happy with his employment, but struggles with getting up in the morning. 

A mental health treatment note from May 2009 reported that the Veteran had a difficult time transitioning from military life to civilian life. The examiner noted the Veteran's problems with activities of daily living such as brushing, bathing and hygiene, as well as keeping his apartment clean. The Veteran had very low motivation. 

In March 2009, a VA mental health treatment note states that the Veteran had frequent nightmares and flashbacks, as well as difficulties with crowds. He occasionally had crowd induced panic attacks. He had been without a job for three years. He did not socialize with his peers and only had one friend. He also had problems maintaining his activities of daily living, to include: failure to brush his teeth for weeks, not taking a shower for weeks, poor overall hygiene, not cleaning his apartment for years, sleeping 12 to 15 hours per day, and he refused to pay his rent. 

On the Veteran's May 2009 VA-Form 9 he wrote that he is irritable and can be mean. He has trouble sleeping, has poor hygiene and lacks motivation to do anything. Further, that prior to entering the military he was nice and slept normally. He reported that he thought of his experiences in Desert Storm daily, had constant flashbacks and nightmares. He states that he is never on time for anything, and struggles to get along with bosses and co-workers. 

The Veteran underwent a VA mental health examination in March 2009. At this time, he reported daily flashbacks as well as nightmares twice a week. He had flashbacks that were triggered by being in large crowds. He sometimes became irritable and would violently act out. He had no tolerance of stress, or any critical comments. He reported feeling depressed, had periods of poor hygiene and lacks motivation to maintain his apartment. He noted an exaggerated startle response to noise. The examiner reported that it was difficult to separate his symptoms of bipolar disorder from his PTSD. The Veteran reported frequent daily intrusive memories, as well as flashbacks and hypervigilance. He was irritable, occasionally physically aggressive and is bothered by loud noises. The Veteran had an unstable work history due to tardiness, interpersonal problems and frustration tolerance. His GAF at the examination was 65. 

A mental health treatment note from December 2008, states that the Veteran had issues with crowds. He had flashbacks and nightmares. He was unable to sleep even with Ambien. He reported staying in bed all day. He lacked any motivation and had not paid rent for 10 months. He went to his aunt's house every day to eat. 

A mental health treatment note from October 2008, reports that the Veteran's mother attended the appointment with him. She stated that the Veteran had not been sleeping at night, his apartment was a disgrace, and his inability to find a job was not helping his situation. Lastly, she reported that he had no energy or motivation to do anything. The Veteran agreed with his mother's statements and further noted that eats too much. He further reported that he had stopped opening his mail and thus missed a scheduled VA examination. 

VA treatment records in April 2007 indicate the Veteran was brought in by the police after acting strange and becoming agitated and aggressive, including treats of harm. Family members indicated the Veteran had not been making sense and was noncompliant with medication. They indicated he has been down, depressed, decreased energy and feeling hopeless. He demonstrated bizarre thoughts, elevated mood, some religious preoccupation, speaking in prose or quotes, inappropriate smiling and joking, sexually preoccupied at times, attempting to engage in conversations with strangers and feeling special. He reported sometimes having thoughts of harming himself or others but denies any intent or plan. He reported hearing voices and seeing images of his friends and believing he can alter others thoughts. Mental status examination reflected he was initially uncooperative and hostile but became more cooperative but remained guarded. Affected was expansive frequently smiling and laughing. Speech was slow and deliberate as if dictating prose or performing a screenplay. Thought process was tangential and he had content delusions. Impulse control was poor and insight and judgment were impaired. Another VA treatment records in April 2007 reflect that the Veteran was brought in by the police for bizarre behavior. The Veteran explained his firehouse buddies noticed he was acting unusual and the police were called when he "got into a tussle" with them. He denied hallucination, anxiety, paranoia, suicidal or homicidal ideation, substance abuse or symptoms of depression. He was well groomed with good hygiene. His behavior was described as restless, sarcastic at times and superficially cooperative. His impulse control was limited and affect was labile. His speech was coherent but over-inclusive and very circumstantial and tangential at times with occasional loose associations. Memory was grossly intact and he was oriented in all spheres. Insight and judgment were poor. 


The symptoms reflected by the February 2012 and March 2009 VA Examinations, and mental health outpatient treatment notes all indicate that the Veteran suffers from occupational and social impairment evidenced by symptoms as: depressed mood, anxiety, chronic sleep impairment, suspiciousness, flattened affect, hypervigilance, irritability (with periods of anger and violence), neglect of personal appearance and hygiene, difficulty adapting to stressful situations. The Veteran's GAF scores have consistently been at 65 with one exception. GAF scores in the 60's are indicative of a "mild to moderate" symptomatology and a 30 percent evaluation. However, the rest of the Veteran's evaluation, objective and subjective symptoms do not meet the criteria of a mild to moderate PTSD symptomology. Rather, there is sufficient evidence that the Veteran's PTSD symptomology more closely approximates a 70 percent evaluation due to his impaired impulse control (with unprovoked irritability with periods of violence); severe neglect in personal appearance and hygiene, as well as lack of motivation to do anything other than go to work and go home; difficulty adapting to stressful situations; and an inability to establish and maintain effective work and social relationships.

The Board observes that a higher rating is not warranted because the competent evidence of record does not demonstrate that the Veteran's symptomatology more nearly approximates a 100 percent evaluation or higher during this period. In this regard, the Veteran's treatment records do not contain evidence that supports a finding that he suffers from total occupational and social impairment, due to such symptoms as: persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time and place; memory loss for names of close relatives, own occupation, or own name. In fact, the records reflect he never endorsed having hallucinations was generally found oriented in all spheres and never described lack of memory to the extent he could not remember his own name or names of loved ones. Furthermore, the symptoms the Veteran does have are not of such nature or severity that they resulted in total occupational or social impairment. Although the Veteran has periods of poor hygiene and can be irritable and act out, he has managed to find a job and maintain employment for a period of 2.5 years after a long period of unemployment. The Veteran does have contact with his family, even though it may be strained at times. The Veteran has a few friends that he socializes with from time to time. Thus, as the Veteran retains some social and occupational functioning, a 100 percent evaluation is not warranted. See 38 C.F.R. § 4.130, Diagnostic Code 9411. 

As such, the Board finds that the criteria for a 70 percent evaluation for the Veteran's service-connected PTSD have been met, but not greater, for the entire period on appeal. 38 C.F.R. § 4.7, Diagnostic Code 9411; see generally Mauerhan v. Principi, 16 Vet. App. 436 (2002).


Additional Considerations 

The Board has also considered whether the Veteran is entitled to a greater level of compensation on an extra-schedular basis. Under most circumstances, the VA Rating Schedule will apply unless there are exceptional factors that make the applicability of the Rating Schedule to a Veteran's case impractical. See Fisher v. Principi, 4 Vet. App 57 (1993). 

The regulation states that the governing norm in these exceptional cases is: a finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards. See 38 C.F.R. § 3.321(b)(1). 

The discussion in the analysis section above reflects the notion that the symptoms and effects of the Veteran's PTSD, namely panic attacks; chronic sleep impairment; impaired impulse control (with unprovoked irritability with periods of violence); severe neglect in personal appearance and hygiene; and lack of motivation are fully contemplated by the applicable rating criteria in the VA Rating Schedule. Therefore, consideration of whether the Veteran's disability picture exhibits other related factors such as those provided by the regulations as "governing norms" is not required and referral for an extraschedular rating is unnecessary. See 38 C.F.R. § 3.321(b)(1); Thun v. Peake, 22 Vet. App. 111 (2008). 

Duty to Notify and Assist 

When VA receives a complete or substantially complete application for benefits, it must notify the claimant of (1) the information and evidence not of record that is necessary to substantiate a claim, (2) which information and evidence VA will obtain, and (3) which information and evidence the claimant is expected to provide. 38 U.S.C.A. § § 5100, 5102, 5103(a), 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). See Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

Further, with respect to the increased initial evaluation claim on appeal, where service connection has been granted and an initial disability rating and effective date have been assigned, the typical service connection claim has been more than substantiated, it has been proven, thereby rendering 38 U.S.C.A. § 5103(a) notice no longer required, because the purpose that notice intended to serve has been fulfilled. See Dingess v. Nicholson, 19 Vet. App. 473 (2006). The appellant bears the burden of demonstrating prejudice from defective notice with respect to downstream elements. See Goodwin v. Peake, 22 Vet. App. 128 (2008). 

In any event, VA's duty to notify has been satisfied through March 2009 and September 2011 notice letters sent to the Veteran that fully addressed all notice elements. These letters informed the Veteran of what evidence was required to substantiate his claim, and of the Veteran's and VA's respective duties for obtaining evidence. The Veteran has been afforded a meaningful opportunity to participate effectively in the processing of his claim and given ample time to respond. 

The Board finds that all notices required by VCAA and implementing regulations were furnished to the Veteran and that no useful purpose would be served by delaying appellate review by sending out additional VCAA notice letters. 

VA must also make reasonable efforts to assist the appellant in obtaining evidence necessary to substantiate the claim for the benefit sought, unless no reasonable possibility exists that such assistance would aid in substantiating the claims. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159 (2014). 

Service treatment records have been associated with the claims file. All post-service treatment records and reports identified by the Veteran have also been obtained. The Veteran has not identified any additional records that should be obtained prior to a Board decision. Therefore, VA's duty to assist the Veteran in obtaining records has been satisfied. See 38 C.F.R. § 3.159(c)(4). The Veteran was afforded two VA psychiatric examinations in February 2012 and March 2009. See 38 U.S.C.A. § 5103A; see also 38 C.F.R. § 3.159(c)(4); Wells v. Principi, 327 F.3d 1339, 1341 (Fed. Cir. 2002). The Board finds the VA examinations adequate for the purposes of the present claim, as they involved a review of the Veteran's pertinent medical history as well as a psychological examination and they provide a discussion of the relevant symptomatology. See generally Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). 

In light of the foregoing, the Board is satisfied that all relevant facts have been adequately developed to the fullest extent possible; no further assistance to the appellant in developing the facts pertinent to the issue on appeal is required to comply with the duty to assist. 38 U.S.C.A. §§ 5103 and 5103A; see 38 C.F.R. § 3.159.

ORDER

Entitlement to a 70 percent evaluation, but not greater, for PTSD is granted for the entire period on appeal. 



REMAND

Based upon the holding in Rice v. Shinseki, the Board considered whether the claim for a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) should be considered as part of the claim for an increased evaluation for the PTSD currently on appeal. 22 Vet. App. 447 (2009). In Rice, the United States Court of Appeals for Veterans Claims (Court) held that when evidence of unemployability is submitted at the same time that the Veteran is appealing the rating assigned for a disability, the claim for TDIU will be considered part and parcel of the claim for benefits for the underlying disability. Id. at 454-55. In this case, the Veteran's representative argued in the March 2015 informal hearing presentation that the Veteran had a history of unemployment due to being fired for tardiness and inability to handle stress.

Although the most recent VA treatment records reflect the Veteran is employed, prior treatment records reflect periods of unemployment. For example, a VA treatment record in June 2007 noted unemployed for a year and a half and further notes that he previously volunteered at the firehouse but was asked to leave after his first breakdown. A December 2008 VA treatment record noted he had been unemployed for three years with the exception of a brief period when he worked for four months. Significantly, the March 2009 VA examination noted that the Veteran has an unstable work history in which he was fired many times. The examiner noted this appears to be due to a combination of tardiness (primarily) but also significantly due to interpersonal problems and problems with frustration tolerance which are as likely as not related to his PTSD. Accordingly, given the periods of unemployment the Board finds that TDIU has been raised.

As the RO has not developed or adjudicated the matter of whether the Veteran is entitled to a TDIU rating, under Rice, the Board must remand for such action. 
38 C.F.R. § 4.16. The severity of the Veteran's service-connected disabilities, his employment history, his education and training, and all other factors having a bearing on the matter must be developed and considered.

Accordingly, the case is REMANDED for the following action:
 
1. Send the Veteran notice that includes an explanation as to the information or evidence needed to substantiate a claim for TDIU.

2. Concurrent with the above, request that the Veteran clarify his employment history, indicating the reason(s) why employment ended, in regard to his most recent employment as an apartment manager. If the Veteran identifies any specific pertinent employment records, assist him in obtaining that evidence.

3. Thereafter, conduct any further development deemed necessary and adjudicate the issue of entitlement to a TDIU. If the determination remains unfavorable to the Veteran, he and his representative should be provided with a supplemental statement of the case that addresses all relevant actions taken on the claim for benefits and given an opportunity to respond to the SSOC prior to returning the case to the Board for further review.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

 This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B , 7112 (West 2014).


____________________________________________
H. SEESEL 
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs